SEYFARTH SHAW LLP
William J. Dritsas (SBN 97523)
wdritsas@seyfarth.com
Eric E. Hill (SBN 173247)
ehill@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, CA  94105-2930
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendants
TGF MANAGEMENT GROUP HOLDCO, INC.,
TOLL GLOBAL FORWARDING (USA) INC., and
INSPERITY PEO SERVICES, L.P.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CARLOS MARQUEZ, an individual and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>TOLL GLOBAL FORWARDING (USA) INC., a corporation; TGF MANAGEMENT GROUP HOLDCO, INC., a corporation; INSPERITY EXPENSE MANAGEMENT, INC.; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No. 2:18-cv-03054 ODW (ASx)<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date:    June 25, 2018<br>Time:   1:30 p.m.<br>Dept:   Courtroom 5D, 5th Floor<br>Judge:  Hon. Otis D. Wright, II<br><br>Complaint Filed:  February 13, 2018 |

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ........................................................................ 1

PLAINTIFF'S ALLEGATIONS AND FACTUAL BACKGROUND ................ 1

I.    SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS AND
      THEORY OF LIABILITY .................................................................... 1

      A.    Plaintiff's Employment Was At All Times Covered by a CBA ........... 1

      B.    Procedural History ..................................................................... 2

      C.    Summary of Governing Collective Bargaining Agreements ............. 2

LEGAL ARGUMENT ................................................................................. 4

I.    LEGAL STANDARD FOR MOTION TO DISMISS ............................. 4

II.   PLAINTIFF'S MEAL BREAK AND OVERTIME CLAIMS FAIL DUE TO
      STATUTORY EXEMPTIONS UNDER CALIFORNIA LAW ................. 5

      A.    The Governing CBAs Are a Proper Subject of Judicial Notice ....... 5

      B.    Plaintiff's Meal Break Claims are Barred Under the Commercial
            Driver Exemption in Labor Code Section 512(e) ......................... 5

      C.    Plaintiff's Overtime Claim is Barred Under the Collective Bargaining
            Exemption of Labor Code § 514 ................................................. 8

III.  PLAINTIFF'S OVERTIME AND MEAL/REST BREAK CLAIMS ARE
      ALSO PREEMPTED UNDER THE LMRA .......................................... 9

      A.    Standard for Section 301 Preemption Under the LMRA ................ 9

      B.    Plaintiff's Meal and Rest Break Claims are Preempted Under the
            Second Burnside Prong Because They Require Interpretation of the
            CBAs ...................................................................................... 11

      C.    Plaintiff's Overtime Claims Are Preempted Because They Require
            Interpretation of the CBAs ...................................................... 15

      D.    Plaintiff's Failure to Reference the CBA Is Irrelevant ................ 16

      E.    Plaintiff's Claims Should Be Dismissed as Completely Preempted or
            for Failure to Exhaust the CBA's Grievance and Arbitration
            Procedures .............................................................................. 16

IV.   PLAINTIFF'S DERIVATIVE CLAIMS ALSO FAIL TO STATE A
      VIABLE CLAIM FOR RELIEF AND MUST BE DISMISSED ............ 18

      A.    Plaintiffs' Fourth Through Seventh Causes of Action are Derivative
            and Must be Dismissed For the Same Reasons ........................... 18

B.    To the Extent Plaintiff's Wage Statement Cause of Action is Based on Meal and/or Rest Break Premiums Alone, It Must Be Dismissed ................ 18

C.    Plaintiff's Fourth Cause of Action and Section 1174(d) Claim Do Not Have a Private Right of Action ...................................................................... 20

CONCLUSION ............................................................................................................ 21

NOTICE AND MOTION TO DISMISS

45769244v.3

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abrego v. Dow Chemical Co.*,
443 F.3d 676 (9th Cir. 2006) ...................................................................5

*Allis Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985)..................................................................10, 16, 17

*Allis-Chalmers Corp.*,
471 U.S. 213 ...........................................................................................16

*Angeles v. US Airways, Inc.*,
2017 WL 565006 (N.D. Cal. Feb. 13, 2017) ...........................................9

*Ayala v. Destination Shuttle Services LLC*,
2013 WL 12092284 (C.D. Cal. Nov. 1, 2013) .......................................15

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ...................................................................4

*Blackwell v. Skywest Airlines, Inc.*,
2008 WL 5103195 (S.D. Cal. Dec. 3, 2008) ..........................................14

*Buck v. Cemex Inc.*,
2014 WL 5430422 (E.D. Cal. Oct. 24, 2014)..............................10, 15, 17

*Burnside v. Kiewit Pac. Corp.*,
491 F.3d 1053 (9th Cir. 2007) ..............................................10, 11, 14, 16

*Busey v. P.W. Supermarkets, Inc.*,
368 F. Supp. 1045 (N.D. Cal. 2005)..........................................................5

*Carr v. Pacific Maritime Ass'n*,
904 F.2d 1313 (9th Cir. 1990) ...............................................................17

*Cleveland v. Groceryworks.com, LLC*,
2016 WL 4140504 (N.D. Cal. Aug. 4, 2016) .........................................13

*Cole v. CRST, Inc.*,
317 F.R.D. 141 (C.D. Cal. 2016)............................................................13

iii

*Consol. Rail Corp. v. Ry Labor Execs. Ass'n*,
    491 U.S. 299 (1989) ................................................................................ 12

*Coria v. Recology, Inc.*,
    2014 WL 3885873 (N.D. Cal. Aug. 7, 2014) ............................................. 15

*Coria v. Recology, Inc.*,
    63 F. Supp. 3d 1093 (N.D. Cal. 2014) ................................................... 7, 16

*Curtis v. Irwin Industries*,
    2015 WL 7185393 (9th Cir. 2015) ............................................................ 15

*Curtis v. Irwin Industries, Inc.*,
    2016 WL 4975188 (C.D. Cal. Sept. 16, 2016) ................................ 13, 15, 17

*Greenly v. Sara Lee Corp.*,
    2006 WL 3716769 (E.D. Cal. Dec. 15, 2006) ............................................ 13

*Hall v. Live Nation Worldwide, Inc.*,
    146 F. Supp. 3d 1187 (C.D. Cal. 2015) .................................................. 5, 18

*Hines v. Anchor Motor Freight, Inc.*
    424 U.S. 554 (1976) ................................................................................ 17

*Jeske v. Maxim Healthcare Servs., Inc.*,
    2012 WL 78242 (E.D. Cal. Jan. 10, 2012) ................................................ 20

*Jones v. Spherion Staffing LLC*,
    2012 WL 3264081 (C.D. Cal. Aug. 7, 2012) ............................................. 19

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
    832 F.3d 1024 (9th Cir. 2016) ............................................................ 10, 17

*Landers v. Quality Commc'ns, Inc.*,
    771 F.3d 638 (9th Cir. 2014) ..................................................................... 4

*Mireles v. Paragon Syst. Inc.*,
    2014 WL 4385453 (S.D. Cal. Sept. 4, 2014) ............................................ 7, 8

*Nguyen v. Baxter Healthcare Corp.*,
    2011 WL 6018284 (C.D. Cal., Nov. 28, 2011) .......................................... 19

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir.1998) ...................................................................... 5

iv

*Pette v. Int'l Union of Operating Engineers*,
    2016 WL 4596338 (C.D. Cal. Sept. 2, 2016) ...................................... 17

*Pyara v. Sysco Corp.*,
    2016 WL 3916339 (E.D. Cal. July 20, 2016) .......................... 7, 9, 19

*Raphael v. Tesoro Ref. & Mktg. Co., LLC*,
    2015 WL 3970293 (C.D. Cal. June 30, 2015) ...................... 10, 15

*Stone v. Writer's Guild of Am. West Inc.*,
    101 F.3d 1312 (9th Cir. 1996) .............................................. 5

*Sulu v. Coca Cola Enter, Inc.*,
    2011 WL 13112254, § 514 (C.D. Cal. Dec. 12, 2011).................. 9

*Torres v. Wells Fargo Bank, N.A.*,
    2016 U.S. Dist LEXIS 163159 (C.D. Cal. Oct. 12, 2016) .............. 18

*Unger v. Fed. Nat'l Mort. Ass 'n, Inc.*,
    2015 WL 4366319 (C.D. Cal. July 16, 2015)............................ 21

*Util. Workers of Am., Local No. 246 v. So. Cal. Edison Co.*,
    852 F 2d. 1083 (9th Cir. 1988) ............................................ 16

*Vaca v. Sipes*,
    386 U.S. 171 (1967)......................................................... 17

*Ward v. Circus Casinos, Inc.*,
    473 F.3d 994 (9th Cir. 2008) ............................................. 4

*Young v. Anthony's Fish Grottos, Inc.*,
    830 F.2d 993 (9th Cir. 1987) ........................................ 9, 16

*Zayerz v. Kiewit Infrastructure West*,
    2018 WL 582318 (C.D. Cal. Jan. 18, 2018) ......................... 7, 18

**State Cases**

*Araquistan v. PG & E*,
    229 Cal. App. 4th 227 (2014) ....................................... 7, 14

*Crusader Ins. Co. v. Scottsdale Ins. Co.*,
    54 Cal. App. 4th 121 (1997) .............................................. 20

45769244v.3

*Kirby v. Immoos Fire Prot. Co.*,
   53 Cal. 4th 1244 (2012) ........................................................................ 19

*Maldonado v. Epsilon Plastics*,
   2018 WL 2123889 (2nd App. Dist. April 18, 2018) ............................. 19, 20

*Porter v. Quillin*,
   123 Cal. App. 3d 869 (1981) .................................................................. 13

*Reynolds v. Bement*,
   107 Cal.App.4th 738 (2003) .................................................................... 21

*Vikco Ins. Servs, Inc. v. Ohio Indem. Co.*,
   70 Cal. App. 4th 55 (1999) ...................................................................... 20

*Vranish v. Exxon Mobil Corp.*,
   223 Cal. App. 4th 103 (2014) .................................................................... 9

**Federal Statutes**

28 U.S.C. § 1331 ........................................................................................ 2

28 U.S.C. § 1332 ........................................................................................ 2

29 U.S.C. § 185(a) ...................................................................................... 9

Labor Management Relations Act § 301, 29 U.S.C. § 185 ......................... *passim*

**State Statutes**

Cal. Bus. & Prof. Code §§ 17200 et seq. ..................................................... 2

NOTICE AND MOTION TO DISMISS

45769244v.3

Cal. Labor Code

§ 200(a) ........................................................................................................ 18

§§ 201-203 ..................................................................................................... 2

§ 203 ............................................................................................................ 19

§ 204 ................................................................................................. 2, 20, 21

§ 210(b) ......................................................................................................... 20

§ 226 ..................................................................................... 18, 19, 20, 21

§ 226(a) ........................................................................................................ 19

§ 226(a)(1) ................................................................................................... 18

§ 226(a)(2) ................................................................................................... 18

§ 226(a)(5) ................................................................................................... 18

§ 226(a)(e) ..................................................................................................... 2

§ 226.7 .............................................................................. 2, 5, 11, 19

§ 510 ....................................................................................................... 2, 8

§ 512 .......................................................................... 2, 11, 14, 17

§ 512(a) .................................................................................. 5, 6, 7, 14

§ 512(e) .................................................................................... *passim*

§ 512(e)(2) ..................................................................................................... 6

§ 512(f)(2) ...................................................................................................... 5

§ 512(g)(1) ..................................................................................................... 6

§ 514 ......................................................................................... 7, 8, 9, 15

§ 1174 ............................................................................................................ 21

§ 1174(d) ................................................................................................ 20, 21

§ 1174.5 ........................................................................................................ 21

§ 1182.12 ........................................................................................................ 7

§ 1194 ............................................................................................................. 2

Vehicle Code § 260 .......................................................................................... 6

Vehicle Code § 15210 ...................................................................................... 6

Vehicle Code § 15210(b) ................................................................................. 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 4, 5

45769244v.3

## SUMMARY OF ARGUMENT

Plaintiff's Complaint fails to state a claim and should be dismissed pursuant to FRCP 12(b)(6) because his claims are *barred* under the California Labor Code, and *preempted* under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Specifically, California's statutory overtime and meal break requirements do not apply to commercial drivers such as Plaintiff who are covered by a collective bargaining agreement ("CBA"). Instead, Plaintiff's overtime and meal break claims can only arise out of negotiable rights provided by the CBA. He cannot pursue these claims based on state law. In addition, the resolution of Plaintiff's overtime, and meal and rest break, claims are preempted under the LMRA because they require interpretation of the CBA's provisions. The existence of LMRA preemption not only results in federal question jurisdiction, it also requires dismissal of the case. Because Plaintiff never exhausted the CBA's mandatory grievance and arbitration procedures, any Section 301 claim he might raise is barred as a matter of law. Plaintiff's remaining causes of action must also be dismissed because they are derivative of the underlying claims. Therefore, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice.

## PLAINTIFF'S ALLEGATIONS AND FACTUAL BACKGROUND

### I. SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS AND THEORY OF LIABILITY

#### A. Plaintiff's Employment Was At All Times Covered by a CBA

Plaintiff Carlos Marquez is a former unionized Driver who was employed by TGF Management Group Holdco Inc. ("Toll"), and worked at Toll's San Pedro, California location until September 2017. (Declaration of Cesar Nevares filed in support of this Motion ("Nevares Decl. ") ¶ 5). At all relevant times Plaintiff worked for Toll, he was represented by the International Brotherhood of Teamsters Local 848 ("IBT"). *Id*. at ¶ 4. The terms and conditions of his employment were governed by a valid CBA between Toll and IBT. *Id*. at ¶ 5; *See*, Request for Judicial Notice ("RJN"), Exhibits 1 and 2.

### B. Procedural History

On February 13, 2018, Plaintiff filed this putative wage and hour class action in the Superior Court of the State of California, County of Los Angeles. Defendants removed the action on April 11, 2018, based on (1) federal question jurisdiction under 28 U.S.C. § 1331, (2) Class Action Fairness Act ("CAFA") jurisdiction under 28 U.S.C. § 1332, and (3) individual diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. 1). The case was initially assigned to Hon. Christina Snyder, but was reassigned to this Court on April 23, 2018. (Dkt. 14).

Plaintiff's central allegations are that Defendants did not (1) properly calculate the regular rate of pay for overtime (Complaint, ¶ 36), (2) pay employees overtime for all work in excess of 8 hours in a day and/or 40 hours in a week (Complaint, ¶ 22 and 36), and (3) provide legally-complaint meal and rest breaks (Complaint, ¶¶ 27-28, 41, 44, and 50). Plaintiff alleges seven purported causes of action for: (1) Violation of Cal. Labor Code §§ 510, 1194 (Recovery of Unpaid Minimum Wage and Overtime); (2) Violation of Cal. Labor Code §§ 226.7, 512 (Meal Period Violations); (3) Violation of Cal. Labor Code §§ 226.7, 512 (Rest Period Violations); (4) Violation of Cal. Labor Code § 204 (Unpaid Wages During Employment); (5) Violation of Cal. Labor Code §§ 201-203 (Failure to Pay Wages Due at Separation of Employment); (6) Violation of Cal. Labor Code §§ 226(a)(e) (Failure to Issue Accurate Itemized Wage Statements); and (7) Violation of Cal. Bus. & Prof. Code §§ 17200 et seq. (Unfair Business Practices). Plaintiff identifies the putative class as current and/or former similarly situated persons who were employed in non-exempt hourly positions in California for Defendants during the Class Period. (Complaint, ¶ 30).

### C. Summary of Governing Collective Bargaining Agreements

The CBA between Toll and IBT governs Plaintiff's and the putative class members' wages, hours, and conditions of employment. (RJN, Exh. 1 and 2).[1] It

---

[1] There have been two CBAs in effect during the relevant period. The first was effective between March 2013 and December 31, 2015 (Exh. 2), while the second has been in

specifically addresses (1) the employees' work hours, rates of pay, the payment of overtime, and the overtime rates, and (2) the employees' entitlement to take meal and rest periods, the manner in which the meal and rest periods are authorized and permitted, and the procedure for employees to communicate with dispatch regarding meal and rest periods. *Id.*  The CBA also includes a grievance and final binding arbitration procedure which is the exclusive forum for resolution of disputes pertaining to compliance with the overtime, and meal and rest period, provisions of the CBA. *Id.*

The CBA contains the following relevant provisions:

1.      Article 15 - <u>Meal and Rest Periods</u> provides:

The Company shall permit all Employees to take any and all meal and rest periods that the Employee is entitled to by law. All meal breaks shall be unpaid by the Employer. The rest periods shall be included with the Employee's regular shift and no deductions shall be made from wages. Employees may not leave a load unattended to take a meal or rest break. Employees must advise dispatch when they begin and end their meal period.  (*See* RJN, Exh. 1 and 2, Art. 15.)

2.      A.  <u>Article 31 — Wages</u> - Wage Rates for Non-Probationary Employees:

|  | January 1, 2016 | April 1, 2017 | April 1, 2018 | April 1, 2019 | April 1, 2020 |
|---|---|---|---|---|---|
| Day Shift | $20.75 | $21.25 | $22.00 | $22.50 | $23.25 |
| Night Shift* | $21.75 | $22.25 | $23.00 | $23.50 | $24.25 |

*All drivers who are scheduled to start work after 5 pm and before 5 am shall be considered "Night Shift" drivers. Any driver that is scheduled to work a combined night and day shift in a single week shall receive the night shift pay on all days worked.

Drivers will receive incentive pay under Toll's current incentive pay schedule.

For purposes of overtime, as set forth in this Agreement, the overtime rate of pay will be based only on the driver's hourly, straight-time rate and will

effect from January 1, 2016 to the present (Exh. 1). The two CBAs contain nearly identical overtime, meal and rest break, and grievance/arbitration provisions.  (RJN, Exh. 1 and 2, Articles 12, 15, & 31.)  The only minor differences in the relevant provisions are that Article 31 (Wages) has different hourly wages for the earlier time period and the earlier CBA makes reference to a different incentive payment and bonus, and the grievance/arbitration provision in the earlier CBA (Art. 12) has a slightly different timeline.  (RJN, Exh. 1 and 2.)

3

not include incentive pay, shift differential pay or any other form(s) of compensation. (*See* RJN, Exh. 1, Art. 31.)

B.     Article 23 - Overtime Hours, provides:

The overtime shall be at the rate of the Employee's straight-time rate plus half of the Employee's straight-time rate (time and one-half (1 1/2). The overtime rate will be paid to all Employees covered by this agreement for all hours worked over forty (40) hours in a single week. The overtime rate of pay will be based on the driver's hourly, straight time rate and will not include incentive pay, shift differential pay or any other form(s) of compensation. (*See* RJN, Exh. 1 and 2, Art. 23.)

3.     The CBA also addresses working conditions in Articles 6-22 (and other provisions), and work hours in Article 23. (*See* RJN, Exh. 1 and 2.)

4.     Article 12 of the CBA provides detailed and comprehensive procedures for the settlement of disputes under the Agreement. This section provides for a written grievance procedure, followed by final and binding arbitration. (*See* RJN., Exh. 1 and 2.)

Pursuant to the concurrently filed Request for Judicial Notice, Defendants respectfully request that the Court take judicial notice of these CBAs. *See* RJN.

**LEGAL ARGUMENT**

**I.     LEGAL STANDARD FOR MOTION TO DISMISS**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is proper when there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain sufficient factual content" to allow the Court to infer "that the defendant is liable for the misconducted alleged." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (citations omitted).

A complaint is facially implausible if it is preempted as a matter of law. See *Ward v. Circus Casinos, Inc.*, 473 F.3d 994, 1000 (9th Cir. 2008) (affirming a Rule 12(b)(6)

4

1   dismissal on preemption grounds). Where preempted under the LMRA, the complaint is
2   appropriately dismissed without leave to amend, because amendment would be futile. *Id*.
3   Because motions to dismiss raise the issue of complete preemption, and "[b]ecause
4   complete preemption often applies to complaints drawn to evade federal jurisdiction,
5   [the] court may look beyond the face of the complaint to determine whether the claims
6   alleged as state law causes of action in fact are necessarily federal claims." *Parrino v.*
7   *FHP, Inc.*, 146 F.3d 699, 704 (9th Cir.1998), superseded by statute on other grounds as
8   stated in *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006).  This is true
9   even when the issue is raised by a Rule 12(b)(6) motion. *Id*.

## II.   PLAINTIFF'S MEAL BREAK AND OVERTIME CLAIMS FAIL DUE TO STATUTORY EXEMPTIONS UNDER CALIFORNIA LAW

### A.   The Governing CBAs Are a Proper Subject of Judicial Notice

When examining a Rule 12(b)(6) motion, the Court may consider "documents
attached to the complaint, documents incorporated by reference in the complaint, or
matters of judicial notice - without converting the motion to dismiss into a motion for
summary judgment."  *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 192
(C.D. Cal. 2015). Courts routinely consider CBAs when ruling on motions to dismiss,
particularly when considering LMRA preemption. See *Stone v. Writer's Guild of Am.*
*West Inc*., 101 F.3d 1312, 1313-14 (9th Cir. 1996) (district court properly considered a
CBA on a Rule 12(b)(6) motion because it was referred to in the pleadings); *Busey v.*
*P.W. Supermarkets, Inc*., 368 F. Supp. 1045, 1049 (N.D. Cal. 2005) (it "is not dispositive
that a complaint is framed without reference to the CBA," and taking judicial notice of a
CBA to determine issues of preemption).  Here, Defendants ask the Court to consider the
operative CBAs pursuant to the "incorporation by reference" doctrine and/or as matters
that may be judicially noticed.

### B.   Plaintiff's Meal Break Claims are Barred Under the Commercial Driver Exemption in Labor Code Section 512(e)

In Plaintiff's Second Cause of Action, he alleges Defendants failed to provide meal
periods in violation of California Labor Code §§ 226.7 and 512(a).  However, Labor

1  Code §§ 512(e) and (f)(2) specifically exempt "commercial drivers" such as Plaintiff
2  from the meal period requirements of § 512(a).  This exemption applies if: (1) the
3  employee is a "commercial driver" covered by a CBA; and (2) the CBA expressly
4  provides for (i) the wages, hours, and working conditions of employees, (ii) meal periods
5  for those employees, (iii) final and binding arbitration of disputes concerning application
6  of its meal period provisions, (iv) premium wage rates for all overtime hours worked, and
7  (v) a regular hourly rate of pay not less than 30 percent more than the state minimum
8  wage rate. Cal. Labor Code § 512(e)(2).

9       Plaintiff satisfies each requirement under § 512(e).  First, Plaintiff was a
10  "commercial driver," as defined in Labor Code § 512(g)(1),[2] when he worked at Toll.  He
11  drove a "commercial vehicle" for Toll that was maintained primarily for the
12  transportation of property, and he operated a "commercial motor vehicle" that required a
13  Class A license. (Nevares Decl. ¶ 7)   In order to operate Toll's trucks and to be
14  employed in his position, Plaintiff was required to have a California Class A driver's
15  license.  (Nevares Decl. ¶ 7). Second, the CBA provides for the wages (Art. 23, and 31),
16  hours of work (Art. 23), and working conditions of employees (Art. 6-22). (RJN, Exh. 1
17  and 2.)  Third, the CBA expressly provides for meal periods for employees.  (Art. 15.)
18  Fourth, the CBA provides for final and binding arbitration of any disputes concerning the
19  application of its meal period provisions.  (Art. 12.) Fifth, the CBA states a premium
20  overtime wage rate for all overtime hours worked, which is 1½ times the hourly rates
21  listed in the CBA.  (Art. 23 and 31.)  Sixth, the regular hourly rates provided for in the
22  CBAs are far higher than 30 percent more than the state minimum wage during this

23  ────────────────
24  [2] "Commercial driver" means an employee who "operates a vehicle described in Section
25  260 or 462 of, or subdivision (b) of Section 15210 of, the Vehicle Code." Cal. Labor
   Code § 512(g)(1). Under Vehicle Code Section 260, a "commercial vehicle" is a motor
26  vehicle "of a type required to be registered under this code used or maintained for the
   transportation of persons for hire, compensation, or profit or designed, used, or
27  maintained primarily for the transportation of property."  Section 15210(b) provides that
   a "commercial motor vehicle" means any vehicle or combination of vehicles that requires
28  a class A or class B license, or a class C license...."

period. *See* Labor Code § 1182.12 (setting a minimum wage of $9.00 per hour after July 1, 2014, $10.00 per hour after January 1, 2016, and $10.00 or $10.50 per hour after January 1, 2017). Under the CBAs, the drivers' hourly regular rate of pay started at $19.50 (day shift) and $20.50 (night shift) in 2014, increased to $20.00 and $21.00 in 2015, and continued to increase during the relevant period.[3]

Because the CBA satisfies the requirements of the commercial driver exemption, Plaintiff cannot assert any meal period claim based on Labor Code § 512(a). In these circumstances, Plaintiff's meal period claim fails as a matter of law due to the statutory exemption in § 512(e). See *Pyara v. Sysco Corp.*, 2016 WL 3916339 at *8 (E.D. Cal. July 20, 2016) (plaintiff's meal break claim fails as a matter of law based on Section 512(e) exemption and court grants motion for judgment on the pleadings); *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1097 (N.D. Cal. 2014) ("[I]f Section 512(e) applies, then 512(a) does *not* apply, and plaintiff's claimed right to meal periods cannot be said to be based on state law."); *Mireles v. Paragon Syst. Inc.*, 2014 WL 4385453 at *5-6 (S.D. Cal. Sept. 4, 2014) (court grants summary judgment as to meal period and overtime claims, finding the exemptions in §§ 512(e) and 514 were met and the claims therefore arose under the CBA); *Araquistan v. PG & E*, 229 Cal. App. 4th 227, 236, 238 (2014) (granting summary judgment to defendant, holding it was *not* required to provide off-duty meal periods pursuant to § 512(a) because it met the exemption criteria under § 512(e); "it would make no sense to conclude that subdivision (a)'s requirements apply to an employee who is explicitly exempted from them."); *Zayerz v. Kiewit Infrastructure West*, 2018 WL 582318 at *4 (C.D. Cal. Jan. 18, 2018) (granting summary judgment based on application of the § 512(e) exemption). Thus, Plaintiff's Second Cause of Action alleging violation of state law meal period requirements must be dismissed with prejudice.

---

[3] The hourly rates increased to $20.75 and $21.75 in 2016, $21.25 and $22.25 on April 1, 2017, and $22.00 and $23.00 on April 1, 2018 (RJN, Exh. 1 and 2, Article 31).

### C.    Plaintiff's Overtime Claim is Barred Under the Collective Bargaining Exemption of Labor Code § 514

Plaintiff's First Cause of Action for overtime also fails under a similar collective bargaining exception to the statutory overtime laws.  Plaintiff claims Defendants violated Labor Code Section § 510 by (1) not including all necessary remuneration when calculating the regular rate of pay for overtime purposes, and (2) denying employees overtime wages for working through breaks and "off the clock." (Complaint, ¶ 35-36). Yet, pursuant to the exemption in California Labor Code § 514, California overtime laws "do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees,…provides premium wage rates for all overtime hours worked and a regular hourly rate of pay…of not less than 30% more than the state minimum wage." Cal. Labor Code § 514.

As detailed above, Plaintiff was covered by a valid CBA that expressly provides for the wages, hours of work, and working conditions of the employees.  (RJN, Exh. 1 and 2.) The CBA provides (1) premium wage rates for all overtime hours worked (Art. 23 and 31; "the overtime shall be at the rate of the Employee's straight-time rate plus half of the Employee's straight-time rate (time and one-half (1½))"); and (2) a regular hourly rate of pay far above 30% percent more than the state minimum wage. (Art. 31.)[4]  (RJN, Exh. 1 and 2)  Thus, by virtue of the § 514 collective bargaining exemption, Plaintiff has no independent statutory right to overtime under the Labor Code; that right is instead governed by the terms of the CBA.

Where the § 514 exemption bars overtime claims under § 510, courts have routinely dismissed the case or granted summary judgment to the defendant. See *Mireles,* 2014 WL 4385453 at *5-6 (granting summary judgment as to meal period and overtime claims, finding that the exemption in Section 514 was met and plaintiff's overtime claims

---

[4] As noted, the state minimum wage during the relevant period was $9.00 - $11.00/hour, and the employees' regular wages exceeded $19.00 - 20.00/hour. (RJN, Exh. 1 and 2)

8

therefore arose under the CBA); *Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 112-13 (2014) (affirming summary judgment for employer on overtime claims due to § 514 preemption); *Pyara*, 2016 WL 3916339, at *3 (plaintiff concedes her overtime claim fails as a matter of law based on the § 514 exemption); *Angeles v. US Airways, Inc.*, 2017 WL 565006, at *4 (N.D. Cal. Feb. 13, 2017) (granting summary judgment for employer on overtime claims due to CBA preemption); *Sulu v. Coca Cola Enter, Inc.*, 2011 WL 13112254, at *4-7, § 514 (C.D. Cal. Dec. 12, 2011) (same).  Thus, Plaintiff's First Cause of Action alleging violation of state law overtime requirements must be dismissed with prejudice.

Finally, because the meal break and overtime claims are statutorily barred under the § 512(e) and § 514 exemptions, the Court need not address whether these claims are also preempted by the LMRA. *Pyara*, 2016 WL 3916339, at *3 (because the overtime action was statutorily barred, "the Court need not address whether the cause of action is also preempted by the LMRA.")  The claims fail as a matter of law due to the statutory exemptions.  However, the meal break and overtime claims are also preempted under the LMRA (as discussed below), which provides an additional basis for dismissal.

## III.   PLAINTIFF'S OVERTIME AND MEAL/REST BREAK CLAIMS ARE ALSO PREEMPTED UNDER THE LMRA

### A.   Standard for Section 301 Preemption Under the LMRA

LMRA section 301 provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, *and any state claim whose outcome depends on analysis of the terms of the agreement*."  *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (citations omitted) (emphasis added).

Although the language of § 301 of the LMRA is limited to "suits for violation of contracts," it has been construed broadly to cover state-law actions that require interpretation of labor agreements.  If the plaintiff's claim cannot be resolved without

9

1    interpreting the applicable CBA, it is preempted.  *Allis Chalmers Corp. v. Lueck*, 471

2    U.S. 202, 220 (1985) ("[W]hen resolution of a state law claim is *substantially dependent*

3    *upon analysis of the terms of an agreement made between the parties in a labor contract*,

4    that claim must either be treated as a § 301 claim, or *dismissed as preempted by federal*

5    *labor-contract law.*" (internal citations omitted)) (emphasis added); *Raphael v. Tesoro*

6    *Ref. & Mktg. Co., LLC,* 2015 WL 3970293, *3 (C.D. Cal. June 30, 2015) ("A state law

7    claim will be preempted if it is so 'inextricably intertwined' with the terms of a labor

8    contract that its resolution will require judicial interpretation of those terms.") (citations

9    omitted).

10        The Ninth Circuit has articulated a two-part test to determine whether a cause of

11   action is preempted by the LMRA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059

12   (9th Cir. 2007). Under the first prong, the court must determine if the asserted claim

13   involves an *independent* right based on state law, or a negotiable right based on a CBA.

14   *Id.* at 1060. If the claim is based on a negotiable right that the CBA has addressed, then

15   the claim is preempted and must be dismissed. *Id.* at 1060.  Under the second prong, if

16   the right exists independently of the CBA, the court must then consider whether resolving

17   the dispute is nevertheless "substantially dependent on [the] analysis of a collective-

18   bargaining agreement." *Id.* If such dependence exists, then the claim is preempted by §

19   301; if not, then the claim is left to state courts to handle in accordance with state law.

20   *Id.*; *Kobold v. Good Samaritan Reg'l Med. Ctr.,* 832 F.3d 1024, 1033 (9th Cir. 2016).

21        Once the court has found that resolution of the claim is dependent on analysis of

22   the CBA, the claim must either be treated as a Section 301 claim or dismissed as

23   completely preempted.  *Allis-Chalmers*, 471 U.S. at 220.  Even if the court elects to treat

24   a preempted claim as a Section 301 claim, such a claim is subject to dismissal for failure

25   to plead exhaustion of grievance procedures set forth in the CBA. *Buck v. Cemex Inc.*,

26   2014 WL 5430422 at *4 (E.D. Cal. Oct. 24, 2014).

27   ///

28   ///

**B.     Plaintiff's Meal and Rest Break Claims are Preempted Under the Second *Burnside* Prong Because They Require Interpretation of the CBAs**

Plaintiff's rest break claims, unlike his overtime and meal break claims, are not explicitly barred by the Labor Code.  Yet, the rest break claims *are* preempted under the LMRA and must be dismissed because the resolution of these claims will be "substantially dependent" on an analysis and interpretation of the CBA.

In his Third Cause of Action, Plaintiff alleges a uniform failure to provide rest breaks:

> "Defendants failed and or refused to implement a relief system by which Plaintiff and Plaintiff Class could receive rest breaks and/or work free rest breaks. Furthermore, due to Defendants' relief system, Plaintiff and Plaintiff Class did not receive their rest breaks within the required statutory time frame. By and through their actions, Defendants intentionally and improperly denied rest periods to the Plaintiff and Class Members in violation of Labor Code sections 226.7 and 512."  (Compl., ¶50).

In his Second Cause of Action related to meal breaks, Plaintiff's Complaint alleges:

> "Defendants failed to schedule Plaintiff and similarly situated persons in an overlapping manner so as to reasonably ensure that Plaintiff and Class Members could take and/or receive such meal periods within the statutory timeframe. As a result, Plaintiff and Class Members were often forced to forego a meal period and/or work during their meal period, including a second meal period. In so doing, Defendants have intentionally and improperly denied meal periods to the Plaintiff and Class Members in violation of Labor Code sections 226.7 and 512 and other regulations and statutes." (Compl., ¶41.)

Plaintiff also alleges:  "At all times relevant hereto, the Defendants, and each of them, failed to schedule Plaintiff and similarly situated persons in a manner so as to reasonably provide meal and/or work free meal period as required by Labor Code sections 226.7 and 512." (Compl., ¶44.)

Because these allegations challenge the manner in which Defendants schedule and provide breaks, the Court must analyze the "inextricably intertwined" CBA terms related to meal and rest breaks (Art. 15) to determine if Defendants met their obligations.  The relevant CBA provision regarding breaks provides:  "*The Company shall permit all Employees to take any and all meal and rest periods that the Employee is entitled to by*

11

*law.* All meal breaks shall be unpaid by the Employer. The rest periods shall be included with the Employee's regular shift and no deductions shall be made from wages. *Employees may not leave a load unattended to take a meal or rest break. Employees must advise dispatch when they begin and end their meal period.*" (emphasis added)  (RJN, Exh. 1 and 2, Art. 15).

In order to decide Plaintiff's rest break claims, this break provision will require interpretation for several reasons. First, the penultimate sentence will require interpretation as to (1) what a "load" is, (2) what it means to "leave" a load, and (3) what "unattended" means.  Plaintiff claims Defendants did not implement a "relief system" that allowed employees to receive their rest breaks within the required time frame.  Thus, the sentence instructing employees not to leave a load unattended will be important in deciding this claim. Yet, there is ambiguity built into this sentence and the parties are likely to dispute its meaning.

Second, it is unclear what it means to "permit" an employee to "take" a meal or rest break in the context of Article 15. The CBA does not obligate Defendants to "provide" meal and rest breaks, but instead uses the more permissive word "permit." The parties will dispute whether employees were "permitted" to take rest breaks. Finally, the sentence "*the Company shall permit all Employees to take any and all meal and rest periods that the Employee is entitled to by law*" will require interpretation.  It is unclear whether this sentence means that employees are entitled to the *number* and *length* of breaks provided by law, or whether it refers to the *nature* of the breaks that must be provided.[5]

---

[5] It will also be necessary to evaluate the parties' past practices with regard to meal and rest periods. Since the parties' past practices are deemed to be part of the CBA, they must be interpreted along with the CBA and provide additional grounds for preempting Plaintiff's meal and rest period claim.  See *Consol. Rail Corp. v. Ry Labor Execs. Ass'n*, 491 U.S. 299, 302 (1989) ("[C]ollective-bargaining agreements may include implied, as well as express, terms. Furthermore, it is well established that the parties' 'practice, usage, and custom' is of significance in interpreting their agreement.") (citations omitted)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The interpretation of these provisions will be required both as to liability and the class certification determination. California law requires an employer to authorize and provide rest breaks, but does not require an employer to ensure that employees actually take their rest breaks. Indeed employees have the discretion to voluntarily elect not to take a rest break. Where class rest break claims fail to demonstrate an unlawful policy, but rather identify divergent, individuated, non-compliant practices, class certification is properly denied.  *Cole v. CRST, Inc*., 317 F.R.D. 141, 144-45 (C.D. Cal. 2016) (determining that employer's policy authorized compliant breaks, and rejecting the argument that the *Brinker* standard that employers are not required to police breaks applies only to meal periods).

Unions, as the employees' exclusive representative, have the authority to exercise discretion on behalf of their members and to bind members of the bargaining unit to the terms of a CBA. *Porter v. Quillin*, 123 Cal. App. 3d 869, 874 (1981).  An interpretation of what the CBA authorizes, including how the union has exercised discretion on behalf of the employees as to meal and rest breaks, is therefore necessarily at issue, because "an employer is not liable for failure to provide rest breaks if it authorizes and permits an employee to take his or her rest break and the employee—absent coercion or encouragement on the part of the employer—foregoes his or her rest break."  *Cleveland v. Groceryworks.com, LLC*, 2016 WL 4140504, at *18 (N.D. Cal. Aug. 4, 2016).

Thus, the applicable CBA break provisions in Art. 15 are far from clear.  This is not an instance where the Court will need to simply consult the CBA.  The parties dispute the meaning of the break provision.  The terms of the CBA are "inextricably intertwined" with Plaintiff's meal and rest period claims, and the resolution of these claims are "substantially dependent upon" an interpretation of the terms of the CBA. See *Greenly v. Sara Lee Corp.* , 2006 WL 3716769 at *4 (E.D. Cal. Dec. 15, 2006) (dismissing rest break claim because analysis of the claim could not be "accomplished without looking to the CBA"); *Curtis v. Irwin Industries, Inc.,* 2016 WL 4975188, at *3-4 (C.D. Cal. Sept. 16, 2016) (declining to amend judgment finding plaintiff's rest break claim preempted

13

1   because "[t]here is a clear dispute between the parties" as to the interpretation of the

2   CBA"); *Blackwell v. Skywest Airlines, Inc.*, 2008 WL 5103195 at *14 (S.D. Cal. Dec. 3,

3   2008) (granting motion for summary judgment on rest break claim because the court

4   would have had to interpret the CBA). As a result, the claims are preempted by Section

5   301 under the second *Burnside* prong.

6          With regard to the meal break claims in particular, there may be another reason to

7   interpret the CBA. If Plaintiff seeks to somehow argue that the commercial driver

8   § 512(e) meal break exemption does *not* apply (despite the clear evidence to the

9   contrary), the Court may need to interpret the CBA to confirm that the exemption applies.

10         In meet and confer discussions between counsel prior to filing this motion,

11   Plaintiff's counsel suggested that the § 512(e) commercial driver exemption does *not*

12   apply here on the theory that the CBA does not provide for off-duty meal breaks.

13   (Declaration of Eric E. Hill filed in support of this Motion ("Hill Decl.") ¶ 3). Plaintiff's

14   counsel referenced the employees' inability to "leave a load unattended" to take a break,

15   and argued this was essentially an on-duty meal break, and therefore the CBA did not

16   provide for compliant off-duty meal breaks. *Id.* While Defendants believe this argument

17   ignores the flexibility and nature of the commercial driver exemption (which does not

18   require off-duty meal breaks),[6] and will be rejected, it appears the parties will dispute the

19   application of the exemption. Ambiguities as to whether the exemption requirements are

20   satisfied must be resolved by analyzing and interpreting the CBA, thus invoking LMRA

21   preemption under the second *Burnside* prong.

22         Numerous courts have held that LMRA preemption exists where there is a dispute

23   as to the application of the § 512 (e) exemption. The determination of whether the

24   processes outlined in the CBA satisfy § 512 (e)'s requirement that the CBA "expressly

25   provides for meal periods" will require analysis and interpretation of the CBAs. See

26

27   [6] See *Araquistan v. PG & E*, 229 Cal. App. 4th at 236, 238 (holding employer was not

28   required to provide off-duty meal periods pursuant to § 512(a) because it met the
    exemption criteria under § 512(e).)

14

1    *Buck*, 2014 WL 5430422 at *4-5 (court found LMRA preemption based on the need to

2    determine whether § 512(e) exemption applied by analyzing the CBA); *Ayala v.*

3    *Destination Shuttle Services LLC,* 2013 WL 12092284 at *5 (C.D. Cal. Nov. 1, 2013)*,* at

4    *4 (court found LMRA preemption based on the need to interpret a CBA to determine

5    whether the exemption in § 512(e) was met); *Curtis v. Irwin Industries*, 2015 WL

6    7185393 at *3 (9th Cir. 2015) and 2016 WL 4975188 at *4,  (where the parties dispute

7    the applicability of the CBAs, the court must interpret and possibly construct the CBA,

8    and merely looking to the CBAs will be insufficient, mandating a finding of preemption);

9    *Coria v. Recology, Inc*., 2014 WL 3885873, at *5 (N.D. Cal. Aug. 7, 2014) (holding that

10   California state law meal period and overtime claims are preempted by the LMRA

11   because they require an analysis of the CBA to determine the application of Labor Code

12   § 512(e) and § 514 overtime and meal period exemptions for employees covered by

13   qualifying CBAs).  In *Raphael v. Tesoro*, 2015 WL 3970293 at *7, the court was faced

14   with similar facts.  To resolve Raphael's claims, it was necessary to interpret the relevant

15   CBAs to determine whether the disputed provision satisfied the requirements of the §

16   512(e) and § 514 exemptions.  Therefore, the court found that Raphael's overtime and

17   meal break claims were "substantially dependent on the analysis" of the CBAs and were

18   therefore preempted under § 301.  The same result should occur here based on the same

19   need to interpret the CBAs to determine if the exemptions apply.

### C.    Plaintiff's Overtime Claims Are Preempted Because They Require Interpretation of the CBAs

22        In addition to being statutorily barred (as discussed in Section II), resolution of

23   Plaintiff's overtime claim could also be "substantially dependent" on interpretation of the

24   CBA and therefore preempted.  In his First Cause of Action, Plaintiff alleges he and

25   putative class members were "denied wages as a result of Defendants' policy of having

26   Plaintiff and Class Members work through meal and/or rest periods and having Plaintiff

27   and Class Members work 'off the clock'."  (Compl. ¶ 36).  Thus, Plaintiff's overtime

28   claim is partly derivative of his meal and rest break claim, and inextricably linked to his

1   allegation that employees were not provided "compliant" meal and rest breaks.  In order

2   to resolve his overtime claim, this Court would be required to interpret the same CBA

3   meal and rest break provisions referenced above.  For these reasons, the overtime claim is

4   similarly preempted under the second *Burnside* prong.  See *Coria*, 63 F. Supp. 3d at 1099

5   (where plaintiff alleged overtime based on work through meal and rest periods, plaintiff's

6   overtime claim was preempted because it required interpretation of the break provision in

7   the CBA).

8          **D.     Plaintiff's Failure to Reference the CBA Is Irrelevant**

9          Plaintiff omits from the Complaint the fact that his wages, entitlement to breaks,

10   and working conditions were governed by the CBA. However, this does not matter

11   because "[t]he key to determining the scope of preemption is not how the complaint is

12   cast, but whether the claims can be resolved only by referring to the terms of the

13   collective bargaining agreement." *Young*, 830 F.2d at 999. "[W]hen resolution of a state-

14   law claim is substantially dependent upon analysis of the terms of an agreement made

15   between the parties in a labor contract, that claim must either be treated as a 301 claim…

16   or dismissed as preempted by federal labor-contract law." *Util. Workers of Am., Local

17   No. 246 v. So. Cal. Edison Co.*, 852 F 2d. 1083, 1086 (9th Cir. 1988) (quoting *Allis-

18   Chalmers Corp.*, 471 U.S. 213).

19          **E.     Plaintiff's Claims Should Be Dismissed as Completely Preempted or for
20                 Failure to Exhaust the CBA's Grievance and Arbitration Procedures**

21          Once Section 301 preemption applies, there are two potential procedural outcomes,

22   both of which require the dismissal of Plaintiff's claims: either (1) the claims are

23   <u>completely</u> preempted under Section 301 and subject to dismissal, or (2) the preempted

24   claims are converted to Section 301 claims, which can only be prosecuted where the

25   plaintiff has previously exhausted the CBA's grievance process.  *Allis-Chalmers Corp.*,

26   471 U.S. at 220.

27          Here, the Court should dismiss Plaintiff's claims as completely preempted, as

28   Plaintiff has not attempted to plead a Section 301 claim. *See Kobold,* 832 F.3d at 1036-37

1  (plaintiff's state-law wage claims completely preempted and properly dismissed as a

2  matter of law because they were dependent upon interpretation of a CBA provision);

3  *Pette v. Int'l Union of Operating Engineers*, 2016 WL 4596338, at *9-11 (C.D. Cal. Sept.

4  2, 2016) (ordering dismissal of plaintiff's claims "[b]ecause resolution of [plaintiff's state

5  law claim] might substantially depend on interpretation of the CBA"); *Curtis,* 2016 WL

6  4975188, at *2-4 (dismissing claims as completely preempted as a result of need to look

7  to the CBA to determine applicability of overtime exemption in Labor Code § 512).

8       If not dismissed as completely preempted, Plaintiff's preempted claims can only be

9  brought as a converted Section 301 claim. *Allis Chalmers Corp.*, 471 U.S. at 220. It is

10  well established that where collectively-bargained grievance procedures are the exclusive

11  and final remedy for breach of a CBA, a plaintiff may not sue under Section 301 until

12  timely completing those procedures. *See Hines v. Anchor Motor Freight, Inc.* 424 U.S.

13  554, 563 (1976) (unless an employee attempted to utilize the contractual procedures for

14  settling his dispute with the employer, his independent suit against the employer would

15  be dismissed); *Vaca v. Sipes*, 386 U.S. 171, 184 (1967); *accord Carr v. Pacific Maritime

16  Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990).  Plaintiff, however, fails to satisfy the

17  prerequisites for a Section 301 suit.

18       There is no dispute that the CBA that applied to Plaintiff contained a mandatory

19  grievance and arbitration procedure.  (RJN, Exh. 1 and 2, Art. 12). Here, Plaintiff has

20  failed to plead that he exhausted the CBA's grievance and arbitration procedures.

21  Exhaustion of these procedures is a prerequisite to asserting claims under Section 301.

22  *Carr*, 904 F.2d at 1317.  "Failure to utilize the grievance procedures, or to invoke them in

23  a timely manner, bars grievants from pursuing remedies in court." *Id.* A complaint is

24  subject to dismissal if an employee fails to plead exhaustion of applicable grievance

25  procedures. *Buck*, 2014 WL 5430422 at *4.  Accordingly, the Court should dismiss the

26  Complaint in its entirety.

27

28

## IV.   PLAINTIFF'S DERIVATIVE CLAIMS ALSO FAIL TO STATE A VIABLE CLAIM FOR RELIEF AND MUST BE DISMISSED

### A.   Plaintiffs' Fourth Through Seventh Causes of Action are Derivative and Must be Dismissed For the Same Reasons

Plaintiff's remaining wage claims should be dismissed because they are derivative of his first three causes of action for overtime, and meal and rest breaks. Plaintiff alleges derivative causes of action for the alleged failure to pay wages during employment and at termination (Claims 4 and 5); the alleged issuance of inaccurate wage statements (Claim 6); and an Unfair Competition Law ("UCL") claim (Claim 7).  Because the underlying overtime and break claims are exempted and preempted, and must be dismissed, the derivative claims also fail as a matter of law. See *Hall*, 146 F. Supp. 3d at 1204 (dismissing claims under section 226, the UCL, and PAGA because they are derivative of plaintiff's first cause of action, which was preempted by the LMRA); *Torres v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist LEXIS 163159, at *19 (C.D. Cal. Oct. 12, 2016) (granting defendant summary judgment on derivative causes of action based on summary adjudication of underlying claims).  As one court put it, it would be "nonsensical" for an employer to be exempted from California's meal and rest break requirements based on the CBAs, but then be subject to a derivative Labor Code wage statement claim. *Zayerz v. Kiewit Infrastructure West*, 2018 WL 582318 at *5 (C.D. Cal. Jan. 18, 2018).  None of the derivative claims have an independent basis, separate from the overtime, and meal and rest break, claims, and therefore they must be dismissed.

### B.   To the Extent Plaintiff's Wage Statement Cause of Action is Based on Meal and/or Rest Break Premiums Alone, It Must Be Dismissed

Labor Code section 226 specifies the information that must be included on wage statements, and in terms of wages, it only requires wage statements to include "wages earned."  See Cal. Lab. Code § 226(a)(1) (gross wages earned); § 226(a)(2) (total hours worked); and § 226(a)(5) (net wages earned). The references to net or gross "wages earned" means "amounts for labor performed by employees." Cal. Lab. Code § 200(a) (emphasis added).

18

Courts have routinely dismissed derivative Section 226 wage statement claims based on the alleged failure to list meal and rest break premium pay.  In *Jones v. Spherion Staffing LLC,* 2012 WL 3264081, at *8 (C.D. Cal. Aug. 7, 2012), the court held that there can be no Section 226 claim for wage statement violations based on rest break violations or the lack of penalty pay. "[P]laintiff cannot advance a claim for *noncompliant wage statements* pursuant to section 226(a) or failure to pay wages due upon termination pursuant to section 203 *based solely on alleged violations of section 226.7*" for missed rest breaks. *Id*. (emphasis added).  The court reasoned that a 226.7 rest break claim is not for the nonpayment of "wages" such that premium payments are required to be identified on a wage statement, and predicating a Section 226 claim upon failure to provide a missed rest break results in an improper double recovery. *Id*. at *8-9; *Pyara*, 2016 WL 3916339, at *7; *Nguyen v. Baxter Healthcare Corp*., 2011 WL 6018284, at *8 (C.D. Cal., Nov. 28, 2011) ("the plain language of Section 226(a) does not require that [a] wage statement include an itemized listing of any premium payments owed to [plaintiff] for missed meal periods."); *Kirby v. Immoos Fire Prot. Co.*, 53 Cal. 4th 1244, 1256 (2012).  Thus, to the extent Plaintiff seeks to bring his wage statement claim based only on alleged unpaid meal and rest break premiums, the claim must be dismissed.

Recent cases also confirm that wage statement penalties cannot be sought based on Plaintiff's claim that he *should* have received a higher rate of overtime.  This theory was championed in *Maldonado v. Epsilon Plastics*, 2018 WL 2123889, at *17-18 (2nd App. Dist. April 18, 2018), which confirmed that if an employee's wage statements accurately record the hours worked and the pay received, there is no Section 226 violation. If it is *subsequently* determined that an employee is due additional overtime compensation (based on the hours listed on the wage statement), the employee may be entitled to the additional overtime but *not* Section 226 wage statement penalties. *Id*. The court noted that the failure to pay overtime wages at the right rate does *not* generate an injury that justifies wage statement penalties.  In fact, this type of penalties would result in "an

19

apparent unintentional double recovery." *Id*. at *17. Thus, Plaintiff also cannot bring a Section 226 wage statement claim based on his allegation that his overtime was paid at the wrong rate.

### C.   Plaintiff's Fourth Cause of Action and Section 1174(d) Claim Do Not Have a Private Right of Action

Plaintiff's fourth cause of action for wages not timely paid during employment is brought pursuant to Labor Code Section 204. This claim should be dismissed without leave to amend because Section 204 does not provide Plaintiff with a private right of action.

A private right of action exists only if the language of a statute or its legislative history clearly indicates the California Legislature intended to create such a right to sue for damages. *Vikco Ins. Servs, Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62 (1999). If the California Legislature had "truly intended to create a private right to sue one would reasonably have expected that the Legislature simply would have directly imposed such liability in clear, understandable, and unmistakable terms." *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 132 (1997).

The remedy for violating Labor Code Section 204 is specified in Labor Code Section 210(b), which states: "The penalty shall be recovered by the Labor Commissioner as part of a hearing held to recover unpaid wages and penalties pursuant to this chapter or in an independent civil action . . . *brought in the name of the people of the State of California and the Labor Commissioner* and the attorneys thereof may proceed and act for and on behalf of the people in bringing these actions." Cal. Labor Code § 210(b) (emphasis added). Therefore, the California Legislature granted the ability to seek remedies under Section 204 only to the Labor Commissioner, not to a plaintiff in a civil suit. *See also Jeske v. Maxim Healthcare Servs., Inc.*, 2012 WL 78242, at *4-5 (E.D. Cal. Jan. 10, 2012) (holding there is nothing in Section 204 that indicates in clear, unmistakable terms that a private right of action exists for its violation). Since there is no private right of action under Labor Code Section 204, the Court should dismiss this

20

1    claim, without leave to amend. *See, e.g., Unger v. Fed. Nat'l Mort. Ass 'n, Inc.*, 2015 WL

2    4366319, at *2 (C.D. Cal. July 16, 2015) (granting a motion to dismiss a claim under

3    Section 204 because there is no private right of action).

4            Similarly, Plaintiff's sixth claim alleges a violation of California Labor Code

5    Section 1174(d), however, no private right of action or remedy exists under Section

6    1174(d). *Reynolds v. Bement*, 107 Cal.App.4th 738 (2003).  Section 1174 only lists the

7    different recording requirements of employers; it does not state any type of relief

8    available for violations of this section. Therefore, Plaintiff's claim should be dismissed.

9    Moreover, the intent of California's recordkeeping laws is to empower the California

10   Labor Commissioner to enforce its inspection powers through a civil penalty, not to

11   award a remedy to a private litigant. See Cal. Lab. Code § 1174.5 (a willful violation of

12   the record keeping requirements of Section 1174 or a refusal to "allow any member of the

13   commission or employees of the division to inspect records pursuant to subdivision (b) of

14   §1174," shall be subject to a civil penalty.).[7] For this additional reason, the Court should

15   dismiss this claim, without leave to amend.

## CONCLUSION

17           Defendants respectfully request the Court grant its motion to dismiss Plaintiff's

18   Complaint with prejudice. Plaintiff's claims are clearly exempted under the Labor Code

19   and preempted by Section 301 of the LMRA.  Plaintiff does not have a cognizable

20   Section 301 claim because he failed to exhaust the mandatory grievance and arbitration

21   procedures under the CBA. In addition, Plaintiff's Complaint attempts to state derivative

22   claims and request remedies for which Plaintiff cannot state a claim for relief, requiring

23   dismissal of these claims as well.

---

[7] It appears that Plaintiff's reference to Section 1174(d) may be an error, because he only
alleges a failure to issue wage statements on the front of the Complaint and only
references Section 226.

21

1    DATED: May 18, 2018                    SEYFARTH SHAW LLP

2

3                                           By:  /s/ Eric E. Hill

4                                                William J. Dritsas
                                                 Eric E. Hill
5                                           Attorneys for Defendants
                                            TGF MANAGEMENT GROUP HOLDCO,
6                                           INC., TOLL GLOBAL FORWARDING (USA)
                                            INC., and INSPERITY PEO SERVICES, L.P.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT
45769244v.3