Anna R. Salusky (SBN: 222484)
asalusky@mahoney-law.net
George B. Singer (SBN: 187185)
gsinger@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 E. Ocean Blvd., Ste. 814
Long Beach, CA 90802
Telephone: (562) 590-5550
Facsimile: (562) 590-8400

Attorneys for Plaintiff, CARLOS MARQUEZ, individually and on behalf of all others similarly situated,

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CARLOS MARQUEZ, an individual and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TOLL GLOBAL FORWARDING (USA) INC., a corporation; TGF MANAGEMENT GROUP HOLDCO, INC., a corporation; INSPERITY EXPENSE MANAGEMENT, INC.; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: 2:18-cv-03054-CAS-AS <br><br> [Los Angeles Superior Court Case No.: BC693823] <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND** <br><br> DATE:   June 25, 2018 <br> TIME:   1:30 p.m. <br> COURTROOM: 5D <br><br> Complaint Filed:  February 13, 2018 |

-1-

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

## I. INTRODUCTION

When a plaintiff moves to remand a case, the defendant bears the burden of establishing that removal was proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Any questions regarding the propriety of removal should be resolved in favor of the party moving for remand. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

## II. DEFENDANTS FAILED TO SHOW BY A PREPONDERANCE OF PLAUSIBLE EVIDENCE THAT THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000.

Defendant is not relieved of its burden to produce enough evidence to establish the amount in controversy exceeds $5 million, and similarly Plaintiff is not required to produce evidence to the contrary. See, e.g., *Dudley v. Eli Lilly and Co.* (11th Cir. 2014) 778 F.3d 909; *Townsend v. Brinderson Corp.* (C.D. Cal., June 30, 2015) WL 3970172; and *Ibarra v. Manheim Investments, Inc.* (9th Cir. 2015) 775 F.3d 1193.

Defendant, in calculating the amount in controversy, made assumptions that all potential class members were denied meal periods and rest periods for every single shift for four years, yet provides absolutely no evidence that this occurred. In his Motion for Remand, Plaintiff pointed out that Defendant has submitted only conclusory statements, but no evidence to support its allegation of over $5 million in controversy.

Now, in a declaration only filed with their Opposition, Defendant attempts to present evidence via the Declaration of Lauren Wojcik ("Wojcik Dec.") that the amount in controversy exceeds $5 million. Ms. Wojcik states in her declaration that there were a total 294 employees in non-exempt hourly positions who worked at some time during the class period of February 13, 2014 through April 4, 2018. Wojcik Dec. ¶ 6. She then states that based on data search filters, there were a total of 36,900 workweeks for all of these workers. Wojcik Dec. ¶ 11.

The problem is not with these numbers, which Plaintiff has no evidence to

contest. The problem is with the assumption of a 100% violation rate for meal and rest breaks, 100% violation rate for waiting time penalties, 100% violation rate for wage statements, and 2 hours of unpaid overtime every week for every employee.

What Defendant has done is very similar to the Defendant in *Garibay v. Archstone Communities, LLC,* (9th Cir. 2013) 539 Fed.Appx. 763. In that case, the court noted that the court stated:

> The only evidence the defendants proffer to support their calculation of the amount in controversy is a declaration by their supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages. Beyond this, the defendants rely on speculative and self-serving assumptions about key unknown variables.*Garibay*, 539 F. App'x at 764.

In Defendant's Removal Notice, there was no such evidence. In the Defendant's Reply to Plaintiff's Motion to Remand, the Wojcik Dec. provides just the sort of evidence as the Defendant in *Garibay*: 1) numbers of employees; 2) numbers of pay periods; 3) average hourly wage information.

The Defendant in *Garibay* assumed in its argument against remand that each class member was denied a meal or rest break twice per week. *Garibay*, 539 F. App'x at 764. The court was not impressed with this unsupported claim, stating, "[Defendant] failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than 'one missed rest period per paycheck or one missed rest period per month.'" *Id.* With regard to waiting time penalties, Defendant assumed 100% violation rate. The court found this unreasonable because it was unaccompanied by any evidence of such a rate, stating, "[Defendant] assumes that each employee would be entitled to the maximum statutory penalty, but provides no evidence supporting that assertion."

*Id.*

In the present case, Defendant assumes even greater violation rates than the Defendant employee in *Garibay*. A defendant can establish the amount in controversy by an unchallenged, plausible assertion. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *Dart Cherokee Basin Operating Co., LLC v. Owens,* (2014)135 S. Ct. 547, 554. The key word is **plausible**. In *Ibarra*, the defendant employer based its 100% meal and rest break violation calculation on the allegations in Plaintiff's complaint that the defendant had a pattern and practice of failing to pay their non-exempt employees for working off the clock. In denying the plausibility of the defendant's calculations, the *Ibarra* court stated:

> We agree with the district court that a "pattern and practice" of doing something does not necessarily mean always doing something. The complaint alleges a "pattern and practice" of labor law violations but does not allege that this "pattern and practice" is universally followed every time the wage and hour violation could arise . . . Because the complaint does not allege that Manheim universally, on each and every shift, violates labor laws by not giving rest and meal breaks, Manheim bears the burden to show that its estimated amount in controversy relied on reasonable assumptions.

*Ibarra*, 775 F.3d at 1198–99.

Defendant is making assumptions without evidence about the likely frequency of violations. To establish an amount in controversy, "[a]ssumptions cannot be pulled from thin air, but need some reasonable ground underlying them." *Ibarra,* 775 F.3d at 1199.

///

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

### A. Meal And Rest Break Penalties

Defendant asserts the amount in controversy for class-wide meal and rest break penalties is $6,424,950. This is based on Eric Hill's Declaration attached to Defendant's Notice of Removal ("Hill Dec.) at paragraph 7, wherein he simply asserts a 100% violation every day for every class member for four years. While his numbers of workers and number of total pay periods are later supported by the Wojcik Dec., the violation rate is still a wild assumption not based on any evidence. Neither the Hill Dec. nor the Wojcik Dec. provide any insight into the likelihood of a 100% violation rate. Importantly, neither the Hill Dec. nor the Wojcik Dec states whether the total employes upon which they base their calculations are full or part-time, which would greatly affect that total figure. Substituting mere speculation for supporting facts, Defendant's figures lack a solid evidentiary basis for this number.

### B. Overtime Penalties

Defendant states in its Notice of Removal that two hours of off-the-clock work per workweek for each putative class member is a conservative estimate. Defendant asserts a total overtime claim of $2,111,049 based on a total 36,900 work weeks at 2 hours of overtime owed per employee, with an average wage of $19.07. Yet, this amounts to nothing more than an assumption based on Erik Hill's Declaration at paragraph 8. Nowhere in the Hill Dec. or the Wojcik Dec. is there any evidence of how often workers put in time over eight hours without receiving pay. Defendant would be in control of such information, as its managers and principles would certainly be aware if a driver is returning after his shift hour has ended, or if a driver is being asked to do work after eight hours. Yet, Defendant provides no data, only assumptions based on the same criteria (number of employees, number of shifts, and hourly rate) that were deemed insufficient by the court in *Garibay. Supra,* 539 F. App'x at 764.

///

///

### C. Wage Statement Penalties

For purposes of the remand, Plaintiff's do not contest Defendant's figure of $635,450 for Plaintiff's wage statements claim;

### D. Waiting Time Penalties

To support its claim of $520,128 in waiting time penalties, Defendant used the number of 112 non-exempt employees who have either been terminated or resigned between February 13, 2015 and April 4, 2018. Hill Dec. ¶ 10. The hourly wage of $19.35 is based on the Wojcik Dec. at ¶ 8. Ms. Wojcik states that she used filters to comb data and derive her figures. However, Defendants failed to comb their data to see when wages were paid to separated employees. Nowhere in any of Defendants declarations does it state how many employees were not paid their wages at time of separation. Rather, in order to stay in federal court, Defendant makes another assumption of a 100% failure rate to pay separated employees.

## III. PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY THE LMRA SECTION 301

As Defendant states in its Opposition, "[t]he key to determining the scope of preemption is not how the complaint is cast, but whether the claims can be resolved only by referring to the terms of the collective bargaining agreement." *Young v. Anthony Fish Grottos*, Inc., 830 F.2d 993, 999 (9th Cir. 1987). This point of law cuts in favor of Plaintiff's argument. The meal and rest break claims cannot be resolved by referring to the Collective Bargaining Agreement (CBA) because the CBA does not describe what Plaintiff's rights are with regard to meal and rest breaks. There is no analysis or interpretation of the CBA required to determine Plaintiff's meal and rest break claims. Under *Burnside v. Kiewit Pac. Corp.*, (2007) 491 F.3d 1053, it is clear that Plaintiff's real and rest break rights are plainly a state law claim, in that they are not substantially dependent on the terms of the CBA. *Burnside*, 491 F.3d at 1060.

///

## A. The Cba's Do Not Expressly Provide For Meal Periods.

Plaintiff acknowledges the exemption for commercial drivers under California Labor Code section 512(e). Defendant points to *Araquistain* to support its claim that its CBA expressly provides for meal periods. However, the court in that case was really deciding something different:

> The question before us, then, is whether we must construe the term "meal periods" in subdivision (e)(2) in the same way as the term is used in subdivision (a); that is, whether the meal periods included in a collective bargaining agreement that meets the requirements of subdivision (e)(2)—and that thereby establishes an exception to subdivision (a)—must have the same characteristics as the meal periods required by subdivision (a).

229 Cal. App. 4th 227, 234, (2014).

The plaintiffs in that case were arguing that because their CBA did not provide for "off duty" meal periods, it was not expressly providing for meal periods, as required by Labor Code section 512 before an electrical or gas workers can be considered exempt under section 512(e). That argument is different from the case at bar. Here, Plaintiff is arguing that meal periods are not expressly provided for because the CBA merely refers Plaintiff to other law, stating:

> Article 15 – Meal and Rest Periods
>
> The Company shall permit all Employees to take any and all meal and rest periods that the Employee is entitled to by law. All meal breaks shall be unpaid by the Employer. The rest periods shall be included with the Employee's regular shift and no deductions shall be made from wages. Employees may not leave a load unattended to take a meal or rest break. Employees

-7-
PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

must advise dispatch when they begin and end their meal period.

(See CBA, Exhibit "A" to Motion to Remand.)

The CBA in *Araquistain* provided for meal breaks as follows, "Notwithstanding any of the foregoing provisions, shift employees and other employees whose workday consists of eight consecutive hours shall be permitted to eat their meals during work hours and shall not be allowed additional time therefore at Company expense." 229 Cal. App.4th at 230. By contrast, the CBA in the present is vague, not indicating that they indeed have a meal break at all. By simply stating that employees have "all meal and rest periods that the Employee is entitled to by law" the CBA is so vague that employee has to look elsewhere to find out what his meal break rights are. It does not state that each employee is entitled to a meal break. Rather it casts doubt where the CBA in *Araquistain* made it clear that employees on an eight-hour shift are affirmatively entitled to a meal break.

**B.  Regardless Of Any Exemption Under Labor Codes Section 512 Or 514, No Intepretation Of The Cba Is Required To Adjudicate Plaintiff's Claims**

Defendant misinterprets Plaintiff's overtime claim under Labor Code section 510. As in *Gregory v. SCIE, LLC*, Plaintiff here admits there is a CBA that provides for overtime wages. 317 F.3d 1050 (2003). The *Gregory* court says it more clearly than Plaintiff could possibly rephrase:

> [Defendant] argues that by reason of Section 514, Section 510 does not apply because the CBA under which Gregory works and is paid provides premium wage rates for overtime. Even assuming the CBA provides premium wage rates for overtime, the question here is the same as that raised by Section 510: **whether when overtime is paid under the CBA it is paid for all overtime hours worked,**

> **as required by California law.** This is a question of interpretation of state law, not of the CBA, that we leave to the state court.

317 F.3d 1050 at 1053 (9th Cir. 2003).

Plaintiff is saying that he worked overtime hours that were not paid. A look at the premium rates in the CBA may be required to determine the value of Plaintiff's claim. This does not mean that any interpretation is required. "[T]he Court directs us to decide whether the claim can be resolved by "look[ing] to" versus interpreting the CBA, If the latter, the claim is preempted; if the former, it is not." *Burnside, supra,* 491 F.3d at 1060. Determining the value of Plaintiff's overtime claims will clearly not require anything other than "looking to" the CBA. The CBA has the following to say about overtime payment:

> Overtime Hours: The overtime shall be at the rate of the Employee's straight-time rate plus half of the Employee's straight-time rate (time and one-half (1 ½)). The overtime rate will be paid to all Employees covered by this agreement for all hours worked over forty (40) hours in a single week. The overtime rate of pay will be based only on the driver's hourly, straight time rate and will not include incentive pay, shift differential pay or any other forms) of compensation.

(Ex A to Motion to Remand, p. 23).

In addition, the CBA provides a rate chart that shows drivers' rates of pay over time, as follows:

Wage Rates for Non-Probationary Employees:

|  | Jan 1, 2016 | April 1, 2017 | April 1, 2018 | April 1, 2019 | April 1, 2020 |
| --- | --- | --- | --- | --- | --- |
| Day Shift | $20.75 | $21.25 | $22.00 | $22.50 | $23.25 |
| Night Shift | $21.75 | $22.25 | $23.00 | $23.50 | $24.25 |

Exhibit A to Motion to Remand, Art. 31, p. 30

One need only ok to the CBA to see that the overtime it pays is 1 ½ times the straight time rate, and then look at the rates which go up slightly once per year. No interpretation of the CBA is required.

Defendant argues that a line of cases show that preemption exists when the parties dispute the application of Labor Code § 512(e) and § 514 exemptions. However, the cases cited are not analogous. In *Raphael v. Tesoro Ref. & Mktg. Co. LLC*, the defendant proved that there were eight CBAs that covered the plaintiff and that the terms were very complex. 2015 WL 3970293, (C.D. Cal.). The court distinguished the matter from *Vasserman*, stating, "While the plaintiff in *Vasserman* succeeded in remanding her case, that success was because there was no dispute regarding the terms of the CBA, a crucial aspect that Raphael's case now lacks." *Raphael* WL 3970293, at *6. Similarly, here the parties do not dispute the terms of the CBA. It is the simplicity of the terms, especially with regard to meal and rest break claims and overtime that makes this case so similar to *Vasserman* and unlike *Raphael*.

Similarly, Defendant points to *Buck v. Cemex, Inc.*, for the proposition that the existence of a dispute as to whether the CBA satisfies the exemption requirements of Labor Code § 512(e) invokes LMRA preemption. 2013 WL 4648579. In that case, the defendant had a very explicit meal policy in its CBA which provided for a ten minute rest period and thirty minute lunch breaks every four hours, giving the driver the option to take an "on duty" meal and receive payment for that time. 2013 WL 4648579 at 5.

The court reasoned:

> [S]ince the CBA makes specific and rather unique provision for meal breaks for drivers, the CBA must be consulted to determine if Defendants met its obligation to

> Plaintiff and to similarly situated drivers with regard to meal breaks. In that case it must be said that the terms of the CBA are "inextricably intertwined" with the issue, Allis–Chalmers Corp., 471 U.S. at 213, i.e., that resolution of the issue is "substantially dependent upon" the terms of the CBA.

*Buck*, WL 4648579, at *6.

The issue in *Buck* is quite different from the case at bar because the parties didn't dispute that the CBA had an explicit meal policy. Rather, it was the policy *as written in the CBA* that needed to be interpreted. Instead, in this matter, we must look to California law to determine Plaintiff's meal break rights. The CBA itself tells us to look away from the CBA to interpret meal and rest break rights.

In addition, the mere fact that the court may need to look at the CBA to determine if Plaintiff's claims require intepretation does *not* itself create preemption:

> A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility. The argument does not become credible simply because the court may have to consult the CBA to evaluate it; "look[ing] to" the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption. Id. at 125, 114 S.Ct. 2068.

Cramer v. Consol. Freightways, Inc., (2001) 255 F.3d 683, 691–92.

Defendant has not shown that any interpretation of any provision of the CBA is required to adjudicate Plaintiff's claims.

///

///

## IV. CONCLUSION

For the foregoing reasons, Plaintiff requests this action be remanded to the Superior Court of California, County of Los Angeles.

Dated: June 11, 2018

**MAHONEY LAW GROUP, APC**

By: /s/

Anna R. Salusky, Esq.
George B. Singer, Esq.
Attorneys for Plaintiff CARLOS MARQUEZ as an individual and on behalf of all employees similarly situated