**O**

# United States District Court
# Central District of California

| | |
|---|---|
| CARLOS MARQUEZ, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOLL GLOBAL FORWARDING (USA) INC., a New York corporation; TGF MANAGEMENT GROUP HOLDCO, INC., a New Jersey corporation; INSPERITY EXPENSE MANAGEMENT, INC., a Texas corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:18-cv-03054-ODW (ASx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [19]** |

## I.   INTRODUCTION

Plaintiff Carlos Marquez brought this putative class action against Toll Global Forwarding (USA), Inc. ("Toll"), TGF Management Group Holdco, Inc. ("TGF"), and Insperity Expense Management, Inc. ("Insperity") (collectively "Defendants"). Plaintiff filed his Complaint on February 13, 2018 in Los Angeles Superior Court alleging seven causes of action: (1) Recovery of Unpaid Minimum Wage and Overtime; (2) Meal Period Violations; (3) Rest Period Violations; (4) Unpaid Wages

During Employment; (5) Failure to Pay Wages Due at Separation of Employment; (6) Failure to Issue Accurate Itemized Wage Statements; and (7) Unfair Business Practices.  On April 11, 2018, TGF and Insperity removed the case, claiming federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), or alternatively under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  The Court finds that jurisdiction exists under CAFA and **DENIES** Plaintiff's Motion to Remand.

## II.    BACKGROUND

### a. Factual Background

Plaintiff brought a class action against Defendants on behalf of himself and the class he seeks to represent (collectively "Plaintiff Class").  Plaintiff Class consists of all non-exempt, hourly-paid employees currently and/or formally employed by Defendants during a period beginning four years prior to the filing of the complaint and running through the date of final judgment in this case.  (Compl. ¶ 1, ECF No. 1-1.)  Plaintiff is a citizen of California.  (Notice of Removal ("Notice") ¶ 34, ECF No. 1.)  Toll is a New York corporation.  (Compl. ¶ 10.)  TGF is a New Jersey corporation.  (Compl. ¶ 11.)  Insperity is a Texas corporation.  (Compl. ¶ 12.) Plaintiff alleges that Defendants employed Plaintiff Class during the relevant period, failed to pay those persons for all hours worked, including minimum wage and overtime premiums, failed to provide meal and rest periods or pay penalties in lieu thereof, and failed to pay wages upon ending of employment.  (Compl. ¶¶ 10–12.) Plaintiff also alleges that each Defendant was the "employer, owner, shareholder . . . and/or alter ego of the remaining Defendants, and was acting . . . with the express and implied permission, consent, and knowledge . . . of the other Defendants."  (Compl. ¶ 15.)  Furthermore Plaintiff alleges that the Defendants approved and authorized all unlawful acts described in the Complaint.  (*Id.*)

Plaintiff does not allege a specific number of violations, nor a specific amount of damages.  He only alleges that the aggregate claims are below the $5,000,000 threshold for federal jurisdiction.  (Compl. ¶ 7.)

### b. Procedural History

Plaintiff's complaint was filed in Los Angeles Superior Court on February 13, 2018. (ECF No. 1-1.) On April 11, 2018, Defendants removed the case. (Notice, ECF No. 1.) Plaintiff moved to remand on May 24, 2018. (Mot., ECF No. 19.) This motion is now before the Court.[1]

## III. LEGAL STANDARD

Defendants removed this case pursuant to 28 U.S.C. § 1441, claiming that this Court has original jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2). CAFA allows for federal jurisdiction over a purported class action when (1) there is an amount in controversy ("AIC") exceeding $5,000,000, (2) at least one putative class member is a citizen of a state different from Defendants, and (3) the putative class exceeds 100 members. 28 U.S.C. § 1332(d)(2). Generally, removal statutes are strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* "[T]he burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). If the alleged AIC is disputed by the plaintiff, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.*

Under CAFA, attorney's fees are properly included in the calculation of the AIC. *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465 at

---

[1] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

*6 (N.D. Cal. Mar. 1, 2012) (citing *Guglielmino* v. *McKee Foods Corp.*, 696 F.3d 696, 700 (9th Cir. 2007)).

## IV.    DISCUSSION

The parties do not dispute that the Plaintiff Class is made of more than 100 individuals and that the parties are minimally diverse as required by § 1332(d)(2). Thus, the only issue is whether Defendants have demonstrated by a preponderance of the evidence that the AIC is greater than $5,000,000.  As discussed below, the Court finds that Defendants have met their burden, and this Court has jurisdiction under CAFA.

### a.  Meal and Rest Period Claims

Defendants initially calculated the amount owed in penalties for missed meal and rest period violations at $6,327,883.  This is based on a 100% violation rate, or one meal period violation and one rest period violation per shift.   There were approximately 165,912 shifts worked by putative class members, at an average hourly rate of $19.07, between February 13, 2014 and April, 2018.  (Decl. of Lauren Wojcik ("Wojcik Decl"). ¶¶ 7, 11, 12, ECF No. 22-1.)  When you multiply the average hourly rate by 2 hours of premium pay (one for each type of violation) and the total number of shifts—$19.07 x 2 hours x 165,912 shifts — the total is $6,327,883.  Plaintiff does not contest this calculation, rather objects to the use of the 100% violation rate assumed by Defendants.  (Reply 5, ECF No. 23.)

Defendants base their assumption of a 100% violation rate on language in the Complaint which defines the meal and rest break class as employees who did not receive a break on "every" shift.   (Compl. ¶ 30 (a), (b).)  Defendants further cite numerous authorities to support this 100% rate: *Coleman v. Estes Express Lines, Inc.* 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) (100% rate acceptable where plaintiff alleged class members were required to work without rest breaks, and "complaint does not allege a more precise calculation."); *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013) (100% rate approved when

"meal break policy resulted in non-exempt employees not receiving meal periods."); *Muniz v. Pilot Travel Centers, LLC*, No. CIV-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (100% rate approved when class members "not always provided" lawful meal or rest periods.); and *Alvarez v. Limited Express, LLC*, No. 07CV 1051 IEG (NLS), 2007 WL 2317125, at *3 (S.D. Cal. Aug. 8, 2007) (100% rate approved when plaintiff alleged rest period violations made it "virtually impossible for defendant's employees to take . . . rest breaks.").

Plaintiff, in arguing against the 100% rate relies heavily on *Garibay v. Archstone Communities, LLC*, 539 F. App'x. 763, 764 (9th Cir. 2013) (finding assumption of 100% violation rate unacceptable because it required reliance "on speculative and self-serving assumptions about key unknown variables."); and *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (". . . assumptions (regarding rate of violations) cannot be pulled from thin air, but need some reasonable ground underlying them.").

Plaintiff, however, alleges no other rate that would be more accurate, and submits no evidence discrediting the 100% rate. Under *Dart Cherokee*, when the AIC is contested by the plaintiff, "*both sides* submit proof and the court decides . . . whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 135 S.Ct. at 550 (emphasis added). The Ninth Circuit in *Ibarra* stressed that "*neither side* has submitted proof regarding the violation rate." *Ibarra*, 775 F.3d at 1195 (emphasis added). As Plaintiff has submitted no evidence of any other rate, this Court has only Defendants' calculations to consider. Additionally, the Plaintiff as the "master of the claim" could have alleged fact-specific allegations to narrow the possible violation rate or penalties sought, keeping them below the threshold, but chose not to. *Catepillar Inc., v. Williams*, 482 U.S. 386, 392 (1987). Furthermore, this Court finds that the AIC surpasses the jurisdictional threshold even when a substantially lower rate of violation is assumed, as discussed below.

The allegations of the rate of violations from the complaint are somewhat ambiguous. First, Plaintiff defines the meal and rest break class as employees who did not receive a break on "every" shift, as discussed above. (Compl. ¶ 30 (a), (b).) However, Plaintiff also alleges that Defendants failed to implement a relief system by which "employees could receive rest breaks and/or work free rest breaks," forcing class members to "*often* forego a meal period and/or work during their meal period . . ." (*Id.* ¶ 41.) (emphasis added).

Addressing this seeming disparity, Defendants offer an alternative calculation of meal and rest break penalties using a 50% violation rate based on the "often" language. (Opp'n 11, ECF No. 22) (citing *Oda v. Gucci America, Inc.* Nos. 2:14-cv-7468-SJW (JPRx), 2:14-cv-07469-SJW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding a 50% violation rate for break violations reasonable given allegation that class members "sometimes" did not receive all breaks.).) A 50% violation rate would yield an AIC of half of Defendants initial calculation, or $3,163,941. The Court finds a 50% violation rate to be reasonable.

**b. Unpaid Overtime Claims**

Defendants similarly calculate the AIC for unpaid overtime wages assuming a violation rate of 100% and that class members were forced to work through a meal break every shift. Drivers in Plaintiff's division worked four 10-hour shifts per week, and other non-exempt employees worked five 8-hour shifts. (Wojcik Decl. ¶ 14.) Therefore class members worked a total of 2 or 2.5 hours per week (30-minute break periods x 4 or 5 shifts per week) for which they were not paid overtime. The relevant time period includes 36,900 workweeks. (Wojcik Decl. ¶ 12.) Assuming two hours of unpaid overtime per employee per week yields an AIC of $2,111,049 (36,900 workweeks x 2 hours off-the-clock work per week x 1.5 times the average hourly rate of $19.07 per hour). However, this claim is largely dependent on the frequency of the meal and rest break violations alleged above. If the Court applies the same logic as above and finds that allegations of "often" working through a break calls for a 50%

violation rate, the amount initially calculated by Defendants should be halved as well, yielding an AIC of $1,055,524.50.[2]

### c. Failure to Provide Accurate Wage Statements

Defendants estimate penalties for failure to provide accurate wage statements at $635,450. (Notice ¶ 63.) Plaintiff does not contest this figure.

### d. Waiting Time Penalties

Defendant calculates $520,934 for the AIC in penalties for failure to pay wages of terminated or resigned employees from a calculation of 112 employees who resigned or were terminated during the relevant period. (Wojcik Decl. ¶ 9.) Recovery of penalties under Cal. Labor Code § 203 does not hinge upon the number of violations committed. Rather, if an employee is owed money at the time of the end of their employment, they are entitled to penalties equal to their hourly rate up to the statutory maximum of 30 days. Cal. Labor Code § 203. Defendants are, therefore, assuming that all 112 terminated/resigned employees experienced some kind of violation (meal/rest break or unpaid overtime) for which they were still owed wages at the time their employment ended. Furthermore, Defendants are assuming that these employees worked 8 hours a day, so under § 203 their wages would accrue at the rate of $19.38 per hour for 8 hours per day. Cal. Labor Code § 203. The $19.38 rate is the average hourly rate Defendants calculate for the terminated employees (Wojcik Decl. ¶ 10.), and the 8 hour work day is supported by the multiple times the Plaintiff alleges such a work day in his complaint. (Compl. ¶¶ 22, 35, 43.) Plaintiff takes issue with the assumption that all 112 employees were not paid their wages at the time of

---

[2] Although Defendants do not use this rate in their calculations for this claim, it follows from a reasonable inference. Courts have previously allowed for the assumption of a lower violation rate than the 100% rate claimed to be used for AIC calculations in order to demonstrate that the threshold would still be satisfied. *See Muniz*, 2007 WL 1302504, at *4 (using the fact that even a rate much lower than 100% yields an AIC above the jurisdictional threshold to dismiss plaintiff's arguments against a 100% rate); *see also Coleman*, 730 F. Supp. 2d at 1150 (applying this logic to a dispute of the hourly rate used in wage penalty calculations: "[h]owever, even taking Plaintiff's argument to the extreme and assuming that the appropriate average hourly rate is California's minimum wage of $8.00/hour . . . Plaintiff's position still does not defeat jurisdiction.").

separation, but again Plaintiff fails to suggest a different number of employees who were denied wages, and provides no evidence to counter Defendants' assumptions. Furthermore, even if we assume arguendo that the 50% violation rate used above applies to the waiting time penalties, it will not make a difference on the jurisdictional question as Defendants will still have crossed the $5,000,000 threshold—$3,163,941 (meal and rest break violations) + $1,055,524.50 (unpaid overtime) + $635,450 (inaccurate wage statements) + $260,467 (half of Defendants' initially calculated waiting time penalties) = $5,115,382.50.

Additionally, this calculation does not include attorney's fees, which Plaintiff demands in the Complaint. (Compl. ¶¶ 37, 80.) Defendants calculate attorney's fees as 25% of the total AIC. (Opp'n 15.) Plaintiff does not contest this calculation. 25% of the sum of the above claims ($5,115,382.50) yields fees of $1,278,845.62. This results in a total AIC of $6,394,228.12, which is well above the $5,000,000 threshold.

## V.   CONCLUSION

As the AIC exceeds the jurisdictional threshold under CAFA, and all other jurisdictional requirements are met, federal jurisdiction exists over this claim. The Court **DENIES** Plaintiff's Motion to Remand. (ECF No. 19.)

**IT IS SO ORDERED.**

June 19, 2018

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**